UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRANDY B. UJOH,<br><br>             Plaintiff,<br><br>      v.<br><br>JOHN E. POTTER, *Postmaster General*<br>*of the United States Postal Service*,<br><br>             Defendant. | Case No. 09-cv-343-JPG |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant John Potter's, Postmaster General of the United States Postal Service (hereinafter "USPS"), Motion for Summary Judgment (Doc. 14), which includes a Supplement (Doc. 18). Plaintiff Brandy Ujoh (hereinafter "Ujoh") filed a Memorandum (Doc. 19) thereto, to which Potter filed a Reply (Doc. 20).

For the following reasons, the Court **GRANTS** the instant motion.

## BACKGROUND

**I.      Facts**

In analyzing a motion for summary judgment, the reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The Court, construing the evidence and all reasonable inferences in the light most favorable to Ujoh, finds as follows:

In response to her interest and application to serve as a transitional city carrier with the East St. Louis Post Office, Ujoh received an interview, presumably in August or early September 2007, with Postmaster Dorothy Robinson (hereinafter "Postmaster Robinson"). The position at

issue required one to walk at least six and a half hours per workday with a 30-pound pouch on their shoulder.  At the conclusion of this interview, Postmaster Robinson shook Ujoh's hand and told her she was hired for the position.

On September 20, 2007, Ujoh received a letter from the USPS informing her that she was on the hiring register to become a transitional city carrier with the East St. Louis Post Office.  This same letter stated that Ujoh was being screened for eligibility with the USPS and that she was not to resign from her current job as she had not received a job offer.  Believing that Postmaster Robinson had previously extended a job offer which Ujoh had accepted, Ujoh ignored the letter's warning and quit her job in late November 2007.

Ujoh underwent a total left hip replacement in December 2005, and she underwent a total right hip replacement in November 2006.  While these procedures occurred long before Ujoh met with Postmaster Robinson, they carried implications regarding her employment with the USPS.

On November 13, 2007, Ujoh met with her orthopedist, Dr. John Clohisy (hereinafter "Dr. Clohisy"), for a routine check-up.[1]  At this check-up, Ujoh complained of moderate right hip and groin pain stemming from the hip replacement surgeries.  This pain prevented Ujoh from getting in and out of a car or being able to walk more than six to twelve blocks.  In an effort to inhibit the pain, Dr. Clohisy administered a steroid injection to Ujoh on November 16.  Ujoh rated the pain in her right hip as a seven (on a scale of ten) before the injection and a four afterwards.  Neither Dr. Clohisy nor Ujoh's primary physician placed Ujoh under any

---

[1] The record does not indicate that Ujoh's meetings with Dr. Clohisy were sanctioned by the USPS in any way; rather, it appears as though Ujoh personally and privately scheduled these appointments.

restrictions post-injection.  In fact, a letter from Dr. Clohisy, dated May 14, 2010, states that Ujoh was released to work full-time following the injection.

After discovering that Ujoh had previously undergone the bi-lateral hip replacements, Postmaster Robinson decided to have her newest employee undergo a complete medical assessment, which took place on November 14, 2007.  After informing the doctor of her hip replacement, Ujoh was told that she would have to undergo a second evaluation.  In the interim, at the USPS's direction, Ujoh filled out a variety of employment forms under the belief that her start date was November 24.

On November 28, Karen Shockley, M.D., (hereinafter "Dr. Shockley") conducted Ujoh's medical evaluation.  Dr. Shockley took an oral history from Ujoh, conducted a physical examination, and reviewed Ujoh's relevant medical records.  In responding to the oral history, Ujoh did not mention her meeting with Dr. Clohisy or her steroid injection, which had occurred just 12 days prior.[2]  Rather, Ujoh told Dr. Shockley that she was not experiencing any problems with her hips and that she was not in pain.  Ujoh went on to state that she was not under any restrictions pertaining to her hips and she could walk, stand, and climb without limitation.  Nevertheless, Shockley's "impression" was that "[w]hile walking is encouraged after total hip replacement, no literature has been found to support a total hip replacement patient's ability to perform full time (8+ hours) walking/climbing/standing on a regular basis."  (Doc. 14-1, p. 14).  Her concluding remarks were, in relevant part, as follows:

> While Ms. Ujoh does not report hip pain on today's exam, it is not reasonable to expect that she is capable of prolonged walking or getting in and out of vehicles repetitively.  It is my medical opinion that [Ujoh] is not able to perform the duties

---

[2]In her investigation, Dr. Shockley uncovered the substance of Ujoh's meetings with Dr. Clohisy, leaving her to label Ujoh "a fair to poor historian."  (Doc. 14-1, p. 14).

3

>of TE Carrier without restrictions. It is recommended that Ms. Ujoh be restricted to 4 hours/shift/walking/standing/climbing.
>
>As Ms. Ujoh recently underwent treatment for right hip bursitis, her condition may be temporary. It is recommended that these restrictions [be] in place for at least 6 months. No opinion can be presented regarding the permanency of her condition at present, as she is under active medical treatment.

*Id.* at 14-15.

Ujoh felt that Dr. Shockley's assessment was motivated by her failure to disclose the recent steroid injection. Regardless, Postmaster Robinson trusted Dr. Shockley's final assessment and found it to be incompatible with the requirements of the position at issue. Specifically, while the position required a minimum of six and a half hours of walking with weight per day, Ujoh could only walk four hours each day. As such, Ujoh was never allowed to begin work.

Ujoh subsequently provided a letter to the USPS from her family practitioner, Mounir Shenouda, M.D. (hereinafter "Dr. Shenouda"). Dated January 14, 2008, the letter stated Ujoh was not then under any restrictions and could perform duties related to postal office. Dr. Shenouda reiterated this position in a letter dated May 19, 2010. The USPS presumably never responded to these letters until this litigation. At her deposition, Ujoh testified that she only experienced a "small amount of pain" before meeting with Dr. Clohisy. (Doc. 14-2, p. 14). Ujoh further testified that, prior to her meeting with Dr. Clohisy, any occasional pain resulted from walking, not getting in and out of cars or climbing stairs. Ujoh continues to personally hold that "[she] was mistakenly believed to be physically impaired and limited at [the] time of employment. [She] did not have a condition that precluded [her] from safely performing the essential job functions as a city carrier." (Doc. 19-1, p. 3). As of the date of her deposition, December 8, 2009, Ujoh cited no problems with her hips or legs.

Although Ujoh was told to reapply when she wished to apply for other positions with the USPS or when she could physically perform as a letter carrier, she decided to bring this lawsuit instead.

## II.     Relevant Procedural Posture

Ujoh filed her Complaint (Doc. 19-1) with this Court on May 5, 2009, alleging one count of violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. (Count I), and one count of violation of the Rehabilitation Act of 1973, 29 U.S.C. § 621, *et seq*. (Count II), against the USPS.  Upon motion by the USPS, the Court dismissed Ujoh's Title VII claim without prejudice for failure to exhaust her administrative remedies with the Equal Employment Opportunity Commission.  (*See* Doc. 12).  Therefore, all that remains is Ujoh's Rehabilitation Act claim, which is the target of the instant motion and the subject of this memorandum and order.

## ANALYSIS

As a preliminary matter, the Court notes that plaintiff's counsel's response to the summary judgment motion lacks in both substance and analysis.  Said response, or what can be made of it, is largely dedicated to the general summary judgment standards of which this Court is well aware.  Any discussion of the Rehabilitation Act is confined to pretext, which, as will be seen, is a last step in the relevant analysis and those steps preceding it were entirely overlooked.  There is very little, if any, discussion as to the relevance of Ujoh's exhibits.  The Court will not be making Ujoh's counsel's arguments for him.  *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").  Consequently, any obvious yet ignored or grossly undeveloped arguments are deemed waived.

5

## I. Summary Judgment Generally

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e)(2); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252.

## II. Rehabilitation Act Generally

The pertinent provision of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination . . . by the United States Postal Service." 29 U.S.C. § 794(a) (2006). The Rehabilitation Act

shares its teeth with the Americans with Disabilities Act of 1990 (hereinafter "ADA"),[3] except that a plaintiff bringing suit under the Rehabilitation Act must also prove that she was involved in a program receiving federal financial assistance. *Id*. § 794(d) ("The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under Title I of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12111, *et seq*.) . . . ."); *Jackson v. City of Chicago*, 414 F.3d 806, 810 n. 2 (7th Cir. 2005) (citing *Silk v. City of Chicago*, 194 F.3d 788, 798 n. 6 (7th Cir. 1999)). As such, this Court can and will use precedent involving the Rehabilitation Act and ADA interchangeably. *See, e.g., Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 193-94 (2002) (using Rehabilitation Act regulations to interpret the ADA); *see also Hamm v. Runyon*, 51 F.3d 721, 725 (7th Cir. 1995) (using ADA case law to interpret the Rehabilitation Act).

When proceeding under the Rehabilitation Act without any direct evidence of disability discrimination, as is the case here, a plaintiff can indirectly prove her case via the burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Tyler v. Ispat Inland, Inc.*, 245 F.3d 969, 972 (7th Cir. 2001). Under the *McDonnell Douglas* method of proof, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *Bekker v. Humana Health Plan, Inc.*, 229 F.3d 662, 672 (7th Cir.2000). To make out this *prima facie* case, a plaintiff must establish the following four elements: that she "suffers from a disability as

---

[3]While much of the ADA was amended by the ADA Amendments Act of 2008, Pub. L. No. 110-325, § 8, 122 Stat. 3559 (2008), these amendments did not become effective until January 1, 2009, or after the alleged discriminatory conduct that formed the bases of Ujoh's EEOC and federal complaints. As such, any change in the law that resulted from these amendments will have no bearing on and will not be discussed in the Court's analysis here. *See Fredricksen v. United Parcel Serv., Co.*, 581 F.3d 516, 521 n. 1 (7th Cir. 2009); *see also Powers v. USF Holland, Inc.*, Case No. 07-cv-246-JVB, 2010 WL 1994833, at *4 (N.D. Ind. May 13, 2010).

defined under the [Rehabilitation] Act; that [s]he was otherwise qualified for the job; that [s]he was involved in programs receiving federal financial assistance; and that [s]he was excluded from participation, denied benefits, or otherwise discriminated against solely because of [her] disability." *Branham v. Snow*, 392 F.3d 896, 902 (7th Cir. 2004) (citing *Silk*, 194 F.3d at 798 n. 6) (quotation marks omitted).  If the *prima facie* case is shown, the burden of production shifts, and the employer must overcome a rebuttable presumption of discrimination by articulating a legitimate, nondiscriminatory reason for the employment action.  *Bekker*, 229 F.3d at 672.  If the employer is successful, the burden then shifts back to the plaintiff to prove that the employer's articulated reason for the employment action was a pretext for discrimination and that the decision was in fact motivated by an unlawful factor.  *Id.*  It bears noting that, while the burden of production rests with the employer during the second stage of the *McDonnell Douglas* inquiry, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

**III.    There Is No Genuine Issue of Material Fact that Ujoh Suffered from a Disability as Defined under the Rehabilitation Act**

Again, because Ujoh lacks direct evidence of discrimination, the Court focuses on the elements of a *prima facie* case under the Rehabilitation Act.  As will be seen, only the first element needs to be discussed at length.

Ujoh must first show that she suffers from a disability covered by the Rehabilitation Act.  *Winfrey v. City of Chicago*, 259 F.3d 610, 614 (7th Cir. 2001).  "The Rehabilitation Act defines an individual with a disability as 'any person who (i) has a mental or physical impairment which substantially limits one or more of such person's major life activities; (ii) has a record of such an

8

impairment; or (iii) is regarded as having such an impairment." *Branham*, 392 F.3d at 902 (citing 29 U.S.C. § 705(20)(B) (2006) (cross-referencing 42 U.S.C. § 12102)). To determine whether a plaintiff has an impairment that substantially limits a major life activity, the Court undertakes the following three inquiries:

> First, we consider whether [the plaintiff's alleged disability] was a physical impairment. Second, we identify the life activity upon which [the plaintiff] relies . . . and determine whether it constitutes a major life activity under the [Rehabilitation Act]. Third, tying the two statutory phrases together, we ask whether the impairment substantially limited the major life activity.

*Bragdon v. Abbott*, 524 U.S. 624, 631 (1998); *accord Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 923 (7th Cir. 2001). The plaintiff is entitled to an individualized assessment of her particular circumstances rather than an assessment based on how a specific impairment usually affects those who have it. *Branham*, 392 F.3d at 902- 03 (7th Cir. 2004) (citing *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483-84 (1999)).

Here, like the USPS, the Court is unsure of which definition of disability Ujoh is claiming. If Ujoh is proceeding under the first definition by maintaining she has a physical impairment that substantially limits her major life activities, her path is cut short by the record. It is undeniable that Ujoh's alleged disability was a physical impairment and, for purposes of this definition, that major life activities are at issue, namely walking, standing, climbing, and working. *See* 29 C.F.R. § 1630.2(i) (2010) ("Major Life Activities means functions *such as* . . . performing manual tasks, walking, . . . and working.") (emphasis added); *Bragdon*, 524 U.S. at 638-39 (1998) ("Rather than enunciating a general principle for determining what is and is not a major life activity, the Rehabilitation Act regulations instead provide a representative list . . . .").

However, Ujoh's affidavit and deposition testimony make clear that her ability to walk, stand, or climb was never and is not substantially limited. § 1630.2(j)(1) ("Substantially limited"

means that one is unable to perform the major life activity at all or is significantly limited in her ability to perform the activity when compared to an average person in the general population.);[4] *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 195-96 (2002). Indeed, Ujoh's affidavit states, "I was mistakenly believed to be physically impaired and limited at [the] time of employment. I did not have a condition that precluded me from safely performing the essential job functions [of] a city carrier." (Doc. 19-1, p. 3). It smacks of common sense that such an absolute position precludes one from invoking the Rehabilitation Act's first or second definition of disability under the Rehabilitation Act. While Ujoh did complain of moderate hip and groin pain when meeting with Dr. Clohisy, any such pain largely subsided following the steroid injection, and the Court "must examine the plaintiff's condition as it exists after corrective or mitigating measures used to combat the impairment are taken into account." *Lawson*, 245 F.3d at 924 (relying upon *Sutton*, 527 U.S. at 482). Moreover, a temporary medical condition does not constitute a disability for purposes of the Rehabilitation Act. *Waggoner v. Olin Corp.*, 169 F.3d 481, 484 (7th Cir. 1999). And, Ujoh has made no showing that her ability to walk, stand, climb, or work was substantially limited in comparison to the average person of the general population.

The more likely understanding of disability under which Ujoh is proceeding is the Rehabilitation Act's third definition, or "regarded as." This is supported by her affidavit and deposition testimony and is somewhat referenced in the complaint. (Doc. 2, p. 9, ¶ 2) ("Plaintiff

---

[4]Courts should consider the following factors when deciding whether a plaintiff is substantially limited in a major life activity: "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." § 1630.2(j)(2).

was perceived to be disabled by Defendant."). However, this pathway is not open to Ujoh either. There is no evidence in the record that the USPS thought that Ujoh was limited in the major life activities of walking, standing, or climbing,[5] and it would be unreasonable for the Court to infer otherwise. Therefore, for purposes of this definition, the only major life activity at issue is working.

With respect to working as a major life activity, "substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." § 1630.2(j)(3)(i); *Mack v. Great Dane Trailers*, 308 F.3d 776, 781-82 (7th Cir. 2002). It is especially important to note that "[t]he *inability to perform a single, particular job does not constitute a substantial limitation* in the major life activity of working." § 1630.2(j)(3)(i) (emphasis added). There has been no showing that the USPS or any employee thereof thought Ujoh could not perform a class of jobs or broad range of jobs when compared to a person with comparable attributes. Rather, the USPS determined Ujoh was *temporarily* unable to fill a specific position (transitional city carrier) with specific requirements (be able to walk at least six and a half hours per workday with a 30-pound pouch on their shoulder). More precisely, Dr. Shockley's recommended restrictions, upon which the USPS relied, were to last at least six months, and she made no finding about the permanency of Ujoh's condition. *See Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002) ("The impairment's impact must . . . be

---

[5]Assuming *arguendo* there was some evidence to support this proposition, Ujoh repeatedly advised the USPS that she was not limited in walking, standing, or climbing; as such, it would defy logic to hold that the USPS regarded Ujoh as limited in these capacities. Further, the Court finds that the factors enunciated at § 1630.2(j)(2), especially lack of duration and impact, weigh against any finding of substantial impairment.

permanent or long term."); *Rule v. Jewel Food Stores, Inc.*, Case No. 03-c-5115, 2004 WL 1672958, at *10 (N.D. Ill. July 27, 2004) ("Precedent teaches that seven months [of being unable to walk] does not qualify as permanent or long term for purposes of the ADA."). The USPS even encouraged Ujoh's reapplication when she could physically perform as a letter carrier or when she wanted to apply for other positions with the USPS. Perhaps most importantly, the Court finds that the factors enunciated at 29 C.F.R. § 1630.2(j), *see supra* note 4, weigh against any finding of substantial impairment, especially when one considers the perceived lack of duration and impact of Ujoh's alleged disability.

In summation, Ujoh does not fall under any of the Rehabilitation Act's definitions of disability. As such, the Court holds that no reasonable jury could find her disabled for purposes of the Rehabilitation Act, and her suit must fail as a result.

**IV.     There Is No Genuine Issue of Material Fact that the USPS's Reason for Refusing to Employ Ujoh Is Pretext**

Assuming *arguendo* Ujoh suffered from a disability as defined by the Rehabilitation Act and could otherwise establish the *prima facie* case required thereunder, she points to no evidence of pretext.

Since the USPS has offered a legitimate, non-discriminatory reason for its decision to not hire Ujoh (the results of Dr. Shockley's assessment did not comport with the explicit requirements of the position at issue), the burden to show pretext would shift back to her. The only impropriety that Ujoh suggests is potential retaliation for her failure to report the steroid injection. However, in her affidavit, Ujoh mentions this retaliation as it relates Dr. Shockley, not the USPS. More importantly, any such retaliation stemmed from frustration over Ujoh's non-disclosure and not disability discrimination. Contrary to Ujoh's belief, the USPS "acted in good

faith and held an honest belief in the proffered reason for [her] termination." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 627 (7th Cir. 2001).

Put simply, there is no genuine issue of material fact as to pretext.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the USPS's Motion for Summary Judgment (Doc. 14) and **DIRECTS** the Clerk of Court to enter judgment accordingly. Further, the Court **DENIES as moot** Ujoh's Motion for Discovery (Doc. 22).

**IT IS SO ORDERED.**
**DATED: August 10, 2010**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**